**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

JONATHAN NETTLES,

     *Plaintiff*,                   Case Nos. 1:22-cv-10499; 1:22-cv-10535;
                                        1:22-cv-10615

v.                               District Judge Thomas L. Ludington
                               Magistrate Judge Patricia T. Morris

ERIK SKABARDIS,
TAMMY BRUNO,
MELISSA JOHNSON,
DAVID DUFFET

     *Defendants*.

_____/

**<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
CONSOLIDATION OF CASES</u>**

**I.**      **<u>RECCOMENDATION</u>**

For the following reasons, **I RECOMMEND** that this Court consolidate cases

1:22-cv-10535 and 1:22-cv-10615 with 1:22-cv-10499.

**II.**     **<u>REPORT</u>**

**A.**     **Background & Procedural History**

In April 2019, Plaintiff Jonathan Nettles was arrested after his spouse accused

him of sexually abusing his daughter.  (*Nettles v. Duffet*, No. 1:22-cv-10615, ECF

No. 1, PageID.4–6 (E.D. Mich. filed Mar. 22, 2022)).  Two years later, he was

acquitted.  (*Id.*)  Since then, Nettles has brought three pro se actions against the

officials involved in his arrest and prosecution.  (*See id.*; *Nettles v. Bruno*, No. 1:22-cv-10535 (E.D. Mich. filed Mar. 14, 2022); *Nettles v. Skabardis*, No. 1:22-cv-10499 (E.D. Mich. filed Mar. 7, 2022)).

Although lacking in detail, Plaintiff's complaints provide the basic facts. Nettles alleges that the chief of the Bridgeport Charter Township Police Department, David Duffet, directed three police officers to break into Nettle's home in August 2018.  (*Duffet*, 1:22-cv-10515, ECF No. 1, PageID.5).  The officers entered Nettles' house through a window, drew their firearms on him, and handcuffed him after "forc[ing] him to the ground." (*Id.*)  Once Nettles had been handcuffed, one of the officers, Sergeant Skabardis, choked him with both hands while the other two officers pinned him down.  (*Id.*)  Nettles spent the next three days in jail before he was eventually released.  (*Id.*)

About two weeks after Nettles' arrest, his wife filed for divorce, and just a day later, she told Duffett, a friend of hers, that Nettles had sexually abused his daughter. (*Id.*)  Duffet then ordered Skabardis returned to Nettles' home, without a warrant, and "seize [his] property." (*Id.*)  Skabardis obtained an allegedly ill-gotten search warrant and "illegally seized and searched [Nettles'] personal belongings." (*Id.*) While executing the search warrant, Skabardis "seized and searched CDs" which fell outside the scope of the warrant.  (*Id.*)

Nettles' wife also told officials in Michigan's Child Protective Services ("CPS") program of Nettles' alleged abuse. (Bruno, No. 1:22-cv-10535, ECF No. 1, PageID.5). Initially, these officials declined "to prosecute the case" because they lacked "credible evidence" of child abuse. (*Id.*) However, in December 2018, Tammy Bruno took over as the supervisor of Nettles' child abuse case and continued the investigation "simply because the Bridgeport Township Police wanted her to." (*Id.*)

Bruno and another official in the CPS program, Melissa Johnson, interviewed Nettles the following month. (*Id.*) At this time, the Michigan State Police were searching "multiple CDs, DVDs, and other media," belonging to Nettles. (*Id.*) Although the search had not yet uncovered any evidence of child abuse, Bruno told Nettles that the state police had uncovered a photograph of Nettles' daughter with his penis in her mouth. (*Id.*)

On the same day as the interview, Bruno and Johnson filed a petition to terminate Nettles' parental rights to his five children. (*Id.*) In their petition, Bruno and Johnson "lied" that police had uncovered a photograph of Nettles abusing his daughter. (*Id.*) They also withheld a statement from Nettles' daughter that she had never been abused by her father, and according to Nettles, they also "lied about how [Nettles] was removed from [his] home." (*Id.*) However, Nettles admits in his

complaint that he was removed from his home by Skabardis and he does not explain how Johnson and Bruno "lied" about this event.  (*Id.*)

Over a week after Bruno and Johnson filed their petition, the state police finished their three-month search through Nettles' CDs, DVDs, and "other media," but found "nothing criminal" on any of the seized items.  (*Id.*)  The state police officer returned the items to Skabardis; however, Skabardis sent one of the CDs back to the state police with a fabricated image of Nettles sexually abusing his daughter. (*Id.*)

Relying primarily on this fake image, Bruno and Johnson convinced a Juvenile Court to terminate Nettles' parental rights at a hearing in April 2019.  (*Id.*) At the hearing, Bruno and Johnson failed to mention any exculpatory evidence and "ignored" Skabardis' constitutional violations.  (*Id.*)

The State of Michigan prosecuted Nettles, but a jury eventually acquitted him of all charges.  (*Id.*)  Nettles then filed three separate civil lawsuits in this Court— one against Skabardis, one against Duffet, and one against Bruno and Johnson.  The Court screened each complaint and dismissed the claims it found to be frivolous or otherwise improper.  (*Skabardis*, 22-cv-10499, ECF No.12; *Bruno*, No. 1:22-cv-10535, ECF No. 9; *Duffet*, No. 1:22-cv-10615, ECF No. 10).

The following claims survived screening.  As to Skabardis, Nettles alleges a series of Fourth Amendment violations.  (*Skabardis*, 22-cv-10499, ECF Nos. 8, 12).

Specifically, he brings claims for illegal search and seizure, false arrest, excessive force, and "*Franks* violations." (*Id.*) Each claim is asserted against Skabardis in his individual capacity, except for Nettles' false arrest claim as it relates to his August 2018 arrest, which he brings against Skabardis in both his individual and official capacities. (*Id.*) As to Bruno and Johnson, Nettles brings Fourth Amendment claims for false arrest, malicious prosecution, and violations of *Franks v. Delaware*—all of which are premised on a civil conspiracy with Skabardis. (*Bruno*, No. 1:22-cv-10535, ECF Nos. 7, 9). Each claim would hold Bruno and Johnson liable in their individual capacity only. (*Id.*) Last, as to Duffet, Nettles brings a Fourth Amendment, false arrest claim for his August 2018 arrest. (*Duffet*, No. 1:22-cv-10615, ECF Nos. 7, 10). Nettles sues Duffet in both his individual and official capacities. (*Id.*)

## B.     Discussion

### 1. Jurisdiction

Under 28 U.S.C. § 636(b)(1)(A) (2018) and Federal Rule of Civil Procedure 72, a magistrate judge may only issue orders on nondispositive, pretrial matters. Consolidation of two or more actions "does not merge suits into a single cause, or change the rights of parties, or make those who are parties in one suit parties in another," and for that reason, courts consistently hold that consolidation is not a dispositive matter. *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 497 (1933); *e.g.,*

*Hoffman v. Genpact*, Nos. 3:22-CV-00009, 3:22-CV-00154, 2022 WL 584497, at

*2 (M.D. Pa. Feb. 25, 2022); *In re Synergy Pharm. Inc. Sec. Litig.*, Nos. 18-CV-873,

19-CV-825, 2020 WL 5763830, at *2 (E.D.N.Y. Sept. 28, 2020); *Buckenberger v.*

*Reed*, No. 06-7393, 2007 WL 1139619, at *3 n.13 (E.D. La. Apr. 17, 2007).

Moreover, consolidation of two or more matters, by a magistrate's order, would not

violate this Court's local rules.  While Local Rule 42.1(b) provides that the "district

judge presiding in the earliest numbered case" must decide a "motion" to

consolidate, the Rule does not address *sua sponte* orders, such as that here.  *See* E.D.

Mich. L.R. 72.1(a)(1), (4) ("[E]ach United States magistrate judge appointed by this

court is authorized to exercise all powers and perform all duties conferred upon

magistrate judges by 28 U.S.C. § 636, as amended.").

However, while consolidation is a nondispositive issue and the issuance of an

order would comply with this Court's local rules, I suggest that consolidation is not

a pretrial matter within the undersigned's authority under § 636(b)(1)(A).  Certain

matters, such as motions to amend pleadings and discovery motions, are "easily

classified as 'pretrial.'"  12 Charles Alan Wright & Arthur R. Miller, Federal

Practice and Procedure § 3068.1 (3d ed. 2022).  But "[i]n more ambiguous

circumstances, there is limited authority" on what constitutes a "pretrial" matter.  *Id.*

At a minimum, the term "pretrial" contains a temporal element—a pretrial

matter must at least be one that is "raised before trial."  *Id.*; *see also Massey v. City*

*of Ferndale*, 7 F.3d 506, 510 (6th Cir. 1993).  And an order may concern a pretrial issue even if it would impact the trial.  Wright & Miller, *supra*, § 3068.1.  Indeed, although motions for summary judgment and motions to dismiss may have substantial impacts on the scope of the trial, § 636 still designates these issues as "pretrial matters."  28 U.S.C. § 636(b)(1)(A).

Still, an order which directly dictates the manner in which the district judge will conduct a trial does not concern a pretrial matter, even if the matter is raised prior to trial.  For example, in *United States v. Ullah*, the Western District of New York held that a motion in limine did not concern a pretrial matter.  No. 04-CR-30A(f), 2005 WL 629487, at *28 (W.D.N.Y. Mar. 17, 2005), *report & recommendation adopted by* 2006 WL 1994678 (W.D.N.Y Jul. 14, 2006).  Although the court recognized that a motion in limine was, by definition, a "pretrial request" to exclude inadmissible evidence, the court reasoned that the purpose of a motion in limine was "to aid the trial process by enabling the [c]ourt to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without . . . interruption of, the trial."  *Id.* (internal quotation marks omitted).  Accordingly, the motion in limine, the court concluded, was a matter that was effectively part of the trial process, and the magistrate judge could not issue an order deciding the motion in limine.  *See id.*

Similarly, here, an order consolidating these actions would directly impact how the court would conduct trial. Consolidation of these actions, for the entire scope of litigation, including trial and posttrial motions, would effectively dictate how the District Judge must conduct trial and address posttrial issues. *See Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993). Such an order would surpass the undersigned's authority under § 636.

Of course, the undersigned could order consolidation for discovery and pretrial matters only, and simply recommend consolidation for all other purposes. Such an order, it seems, would comply with § 636, Rule 72, and this Court's local rules. Nonetheless, the undersigned elects to proceed entirely by report and recommendation. Consolidation of these actions, even for pretrial purposes, would affect the District Judge's management of his own docket. Rather than unilaterally ordering consolidation of these actions, the undersigned will only issue a report and recommendation. *Se*e E.D. Mich. L.R. 42.1(b).

## 2. Consolidation

Though no motion has been filed to consolidate these cases, this Court may *sua sponte* consolidate cases pursuant to Federal Rule of Civil Procedure 42. *Cantrell*, 999 F.2d at 1011. Rule 42 provides that the "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Fed. R. Civ. P. 42(a)(2). The purpose behind consolidating actions is to "administer

the court's business 'with expedition and economy while providing justice to the parties.'" *Advey v. Celotex Corp.*, 962 F.2d 1177, 1180 (6th Cir.1992) (quoting 9 Wright & Miller, *supra*, § 2381).

The existence of "a common question of law or fact is only a threshold requirement; once a common question has been established, the decision to consolidate rests in the sound discretion of the district court." *Banacki v. OneWest Bank*, FSB, 276 F.R.D. 567, 571 (E.D. Mich. 2011); *see also Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853, 866 (E.D. Mich. 2019). To make this decision, "[t]he court should weigh "the interests of judicial economy against the potential for new delays, expense, confusion, or prejudice." *Banacki*, 276 F.R.D. at 571 (quotation and citation omitted); *see also Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982). The court should be careful that it does not allow its interest in preserving judicial economy does not "trump" the judiciary's "dedication to individual justice"—the court "must take care that each" party's "cause" is not "lost in the shadow of a towering mass litigation." *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 853 (2d Cir. 1992). For that reason, the Court should not consolidate actions "simply because" they "*include* a common question of fact or law." *Banacki*, 276 F.R.D. at 572. If two or more "cases involve *some* common issues but individual issues predominate," then consolidation would not advance the parties' interest in individual justice. *Id.* (citing *Shump v. Balka*, 574 F.2d 1341 (10th Cir. 1978)).

9

Here, each complaint arises from the same series of events, and Nettles'
complaints against Duffet and against Bruno and Johnson are both intertwined with
his complaint against Skabardis.  Indeed, Nettles' claims against Bruno and Johnson
are premised on a civil conspiracy with Skabardis, and his claim against Duffet
concerns the same arrest in August 2018 as his false arrest claim against Skabardis.
(*Bruno*, No. 1:22-cv-10535, ECF No. 9, PageID.32; *Duffet*, No. 1:22-cv-10615, ECF
No. 10, PageID.41).  Moreover, because Nettles sues Duffet and Skabardis in their
official capacities for the August 2018 arrest, both claims, which concern the same
incident, are effectively brought against Bridgeport Township.  (*Skabardis*, No.
1:22-cv-10499, ECF No.12, PageID.54–55; *Duffet*, No. 1:22-cv-10615, ECF No. 10,
PageID.39–41); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

The claims in each action, therefore, are substantially similar, and individual
issues do not predominate in any action.  *Banacki*, 276 F.R.D. at 572.  Indeed, trying
each case separately would present a risk that the Court might reach inconsistent
judgements.  *See Cantrell*, 999 F.2d at 1011.  Consolidating these matters will also
substantially benefit judicial economy, and there is no indication that consolidation
will prejudice any party or create any additional delays, expenses, or confusion.

**C.     Conclusion**

For the previously discussed reasons, I suggest that the above-captioned cases
involve common questions of law and fact.  Accordingly, **I RECOMMEND** that

case numbers 22-cv-10535 and 22-cv-10615 be consolidated with case number 22-cv-10499, that case numbers 22-cv-10535 and 22-cv-10615 be closed for administrative purposes, and that any filings which would have been made in 22-cv-10535 and 22-cv-10615 be made entered on case number 15-cv-11456.

Date: August 15, 2022                    S/ PATRICIA T. MORRIS
                                         Patricia T. Morris
                                         United States Magistrate Judge