UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JONATHAN NETTLES,

    *Plaintiff*,

Case Nos. 1:22-cv-10499; 1:22-cv-10535; 1:22-cv-10615

v.

District Judge Thomas L. Ludington
Magistrate Judge Patricia T. Morris

ERIK SKABARDIS,
TAMMY BRUNO,
MELISSA JOHNSON,
DAVID DUFFET,

    *Defendants*.
_____/

## REPORT AND RECOMMENDATION

**I.   RECOMMENDATION**

For the following reasons, I **RECOMMEND** that the Court **GRANT** Defendant Melissa Johnson's Motion to Dismiss (ECF No. 63), **DISMISSING** all claims against her in her individual capacity.

**II.   REPORT**

    **A.  Factual and Procedural History**

Jonathon Nettles was prosecuted in a Michigan court after police discovered a photograph of him sexually assaulting his daughter on a CD recovered from Nettles' home. (ECF No. 1, PageID.5). Shortly after police discovered this photograph, Child Protective Services ("CPS") successfully petitioned a court to

terminate Nettles parental rights over all five of his children. (*Id.*) However, Nettles alleges that police doctored the image, and he now sues the two CPS officials involved in his case, claiming they knew that police had falsified the image. (*Id.* at PageID.2–3, 5).

Nettles alleges that three Bridgeport Township police officers broke into his home through a window, drew their firearms on him, and handcuffed him after "forc[ing] him to the ground." (*Id.* at PageID.5). Once Nettles had been handcuffed, one of the officers, Sergeant Skabardis, choked him with both hands while the other two officers pinned him down. (*Id.*) Nettles spent the next three days in jail before he was eventually released. (*Id.*)

About two weeks after Nettles' arrest, his wife filed for divorce, and just a day later, she accused him of sexually abusing his daughter. (*Nettles v. Bruno,* No. 1:22-cv-10535, ECF No. 1, PageID.5). Initially, officials in Michigan's CPS program declined "to prosecute the case" because they lacked "credible evidence" of child abuse. (*Id.*) However, in December 2018, Tammy Bruno took over as the supervisor of Nettles' child abuse case and continued the investigation (according to Plaintiff) "simply because the Bridgeport Township Police wanted her to."[1]  (*Id.*)

---

[1] On December 22, 2022, the Undersigned recommended that the remaining claims against Defendant Bruno be dismissed.  (ECF No. 55).

2

Bruno and another official in the CPS program, current Defendant Johnson, interviewed Nettles the following month. (*Id.*) At this time, the Michigan State Police were searching "multiple CDs, DVDs, and other media," belonging to Nettles. (*Id.*) Although the search had not yet uncovered any evidence of child abuse, Bruno told Nettles that the state police had uncovered a photograph of Nettles' daughter with his penis in her mouth. (*Id.*)

On the same day as the interview, Bruno and Johnson filed a petition to terminate Nettles' parental rights to his five children. (*Id.*) In their petition, Bruno and Johnson "lied" that police had uncovered a photograph of Nettles abusing his daughter. (*Id.*) They also withheld a statement from Nettles' daughter that she had never been abused by her father, and according to Nettles, they also "lied about how [Nettles] was removed from [his] home." (*Id.*) However, Nettles admits in his complaint that he was removed from his home by Skabardis. (*Id.*)

Over a week after Bruno and Johnson filed their petition, the state police finished their three-month search through Nettles' CDs, DVDs, and "other media," but found "nothing criminal" on any of the seized items. (*Id.*) The state police officer returned the items to Skabardis; however, Skabardis sent one of the CDs back to the state police with a fabricated image of Nettles sexually abusing his daughter. (*Id.*)

Plaintiff alleges that Plaintiff alleges that Bruno and Johnson, relying primarily on this alleged fake image, convinced a Juvenile Court to terminate his parental rights at a hearing in April 2019. (*Id.*) At the hearing, Bruno and Johnson failed to mention any exculpatory evidence and "ignored" Skabardis' constitutional violations. (*Id.*) The State of Michigan prosecuted Nettles, but a jury eventually acquitted him of all charges. (*Id.*)

After the state released Nettles from jail, he filed the current action on March 7, 2022 *in forma pauperis*, bringing several claims under 42 U.S.C. § 1983 (2018) against Skabardis and three now-dismissed Saginaw County Prosecutors. In a separate action, he brought claims against Bruno, Johnson, and the now-dismissed Michigan Department of Health and Human Services ("MDHHS"), the State entity that operates the CPS program. (*Nettles v. Bruno*, No. 1:22-cv-10535, ECF No. 1 PageID.5). Nettles brings Fourth Amendment claims for false arrest, malicious prosecution, and violations of *Franks v. Delaware*, 438 U.S. 154 (1978). (*Id.* at PageID.3). Nettles also alleges that these Defendants violated his rights to Due Process and Equal Protection under the Fourteenth Amendment. Nettles sues each Defendant in both their individual and official capacities, and he requests only monetary damages. (*Id.* at PageID.6). On March 22, 2022, Plaintiff brought a third action against David Duffett, the Bridgeport Township Chief of Police. (*Nettles v. Duffet*, No. 1:22-cv-10615, ECF No. 1, PageID.4–6).

On August 2, 2022, the District Court adopted my recommendation to dismiss Defendant Michigan Department of Health and Human Services/CPS; to dismiss the official-capacity claims against Bruno and Johnson; to dismiss all equal protection claims against any Defendant; and to dismiss the *Franks,* false-arrest, and malicious - prosecution claims "except to the extent that these claims are premised on a civil conspiracy." (*Nettles v. Bruno*, 22-10535, ECF Nos. 7, 9). On September 2, 2022, the actions were consolidated. (No. 22-cv-10499, ECF No. 14-15); (No. 1:22-cv-10615, ECF No. 12); (No. 1:22-cv-10535, ECF No. 11).

### B.    LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss a complaint on the grounds that the district court lacks subject matter jurisdiction. Where subject matter jurisdiction is challenged under Rule 12(b)(1), it is the plaintiff's burden to prove that the district court has jurisdiction. *See id.* The court will accept the complaint's factual allegations as true insofar as the defendant facially challenges the "sufficiency of the pleading" itself. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). However, the complaint's factual allegations are not presumptively true where there is a factual controversy. Instead, the court must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." Where a defendant files a motion to dismiss under both 12(b)(1) and 12(b)(6), the Rule 12(b)(1) challenge must be addressed

5

first because "the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

Under Rule 12(b)(6), a plaintiff's complaint shall be dismissed for failure to state a claim if it lacks sufficient "factual matter (taken as true) to" provide "plausible grounds to infer" that the elements of a claim for relief could be met. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see* Fed. R. Civ. P. 12(b)(6). A complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere labels, conclusory statements, or "formulaic recitations" of the elements of a cause of action are not sufficient to meet this burden if they are unsupported by adequate factual allegations. *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The requirement to provide a plausible claim does not require that a claim be "probable"; however, a claim must be more than merely "conceivable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009).

Because Plaintiff filed his complaint *pro se*, his pleadings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

### C. ANALYSIS

Defendant Johnson seeks to dismiss the one remaining claim against her, a civil conspiracy claim. (ECF No. 62, PageID.411). She argues that the conspiracy

claim is barred by the *Rooker-Feldman* doctrine, res judicata, and collateral estoppel; the absolute immunity conferred upon social workers, and qualified immunity.[2] (*Id.* at PageID.406).

### 1. The *Rooker-Feldman* Doctrine

Defendant Johnson argues first that the conspiracy claims against her are barred by the *Rooker-Feldman* doctrine. (ECF No. 63, PageID.413). She acknowledges the Court's finding that "Plaintiff plausibly alleged facts, that if accepted as true, 'could potentially establish a conspiracy' against Defendant Johnson because 'a fact finder could infer that Skaabardis, Bruno, and Johnson agreed to use the same fabricated evidence in their respective cases.'" (*Id*. at PageID.414) citing (*Nettles v. Bruno,* 1:22-cv-10535, ECF No. 7, PageID.25; ECF No. 9, PageID.32). She points out however that at a state court hearing to determine whether Plaintiff's parental rights should be terminated, Plaintiff pled no contest to the allegations by Defendants Bruno and Johnson that he forced his minor daughter to put her mouth on his penis and then took a photograph. (*Id*. at PageID.415-16).

In response, Plaintiff reiterates that Defendants Bruno and Johnson pursued the termination of parental rights in concert with Defendant Skabardis. (ECF No. 67, PageID.472). He states that these Defendants "lied and withheld evidence in the

---

[2] Because claims against Johnson are dismissible under Rule 12(b)(1) (*Rooker-Feldman*) and Rule 12(b)(6) (res judicata and qualified immunity), it is not necessary to discuss her additional arguments for dismissal.

CPS case from myself, my lawyer and the Court to get the CPS petition authorized" and "used overzealous and coercive investigative and administrative tactics to intimidate and attempt to prove my guilt (abuse of process to create probable cause)." (*Id.*)  He states that his "civil lawyer advised [him] to plead no contest [in the termination case] largely based on misinformation and lies by CPS," noting that his lawyer informed him that there was "a photo with [Plaintiff's] penis and [his] daughter!" (*Id.*).  He states that at the time of termination of his parental rights, he had been held in the Saginaw County Jail and was "unable to access my evidence or present a viable defense." (*Id.*).  He has provided audio files of his former wife discussing her reasons for divorcing him (which do not include the alleged molestation of their daughter) and Plaintiff's interview by Bruno and Johnson where he vehemently denies molesting his daughter.  (*See* ECF No. 59).

The state court April 22, 2019, order of disposition terminating Plaintiff's parental rights states that Plaintiff, represented by counsel, pled no contest to the claims him and "stipulated to each of the four grounds for termination of his parental rights . . ." (ECF No. 63-1, PageID.437).  The court determined that "the allegations were proven by a preponderance of the evidence based on Mr. Nettles' plea." (*Id.*)

The *Rooker–Feldman* doctrine divests federal district courts of subject matter jurisdiction to review state court judgments. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462

(1983). *Rooker–Feldman* reflects the principle set forth in 28 U.S.C. § 1257 that the United States Supreme Court is the sole federal court with jurisdiction to review state court decisions. The doctrine precludes district courts from hearing challenges to state court decisions "even if those challenges allege that the state court's action was unconstitutional." *Feldman,* 460 U.S. at 486.

In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005), the Supreme Court described as follows the circumstances under which a *Rooker–Feldman* jurisdictional bar comes into play:

> The *Rooker–Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

This case bears superficial similarities to *Kovacic v. Cuyahoga County Department of Children and Family Services*, 606 F.3d 301 (6th Cir. 2010), in which the plaintiffs did not challenge the custody determination *per se* but rather, alleged that their rights had been violated by the Department of Children and Family Services during its investigations. *Id.* at 306. The Court found that because a third party's actions, rather than the judgment itself, was the basis of the claim, the allegations were not barred by *Rooker-Feldman*. *Id.* at 310.

Here, while Plaintiff alleges that his injuries, i.e. the loss of custody and incarceration, was caused by Defendant Johnson's misfeasance, the injury was

9

directly predicated on his no-contest plea to the allegations in the petition. *See Judgment* (ECF No. 30-2, PageID.146). The injuries that Plaintiff now claims were not directly caused by Defendant Johnson but rather, his superseding no contest plea resulting in the judgment against him. To grant relief to Plaintiff, this Court would necessarily have to review that judgment. Again, the termination of Plaintiff's parental rights was premised on his no contest plea in which he conceded to the allegations brought by Defendant Johnson. His concession to her allegations wholly defeats his claim that she falsified evidence, knowingly relied on falsified evidence, or conspired with others to present false evidence in support of the termination of his parental rights or the criminal case against him.

The Court is mindful that Plaintiff was jailed at the time that he entered the no contest plea in the custody case, that he pled on the (arguably bad) advice of counsel, and that he was ultimately cleared of the child molestation charges. But the judgment in the custody case was directly premised on his plea. Thus, he is a classic "state court loser" who now seeks to have this Court review a state court judgment that is not to his liking. Under *Rooker–Feldman*, this Court has no jurisdiction to hear his claim.[3] "[W]hen a claim is barred by the *Rooker-Feldman* doctrine, the

---

[3] The *Rooker–Feldman* doctrine has particular force in the context of state domestic relations cases, including parental termination proceedings. The Sixth Circuit has consistently held that "[e]ven when brought under the guise of a federal question action, a suit whose substance is domestic relations generally will not be entertained in a federal court." *Firestone v. Cleveland Trust Company,* 654 F.2d 1212, 1215 (6th

10

court must dismiss the claim for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1)." *Johnson v. City of Southfield*, No. 18-12348, 2019 WL 130291, at *2 (E.D. Mich. Jan. 8, 2019) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). Plaintiff's remedies, if any, lie in State court, not this Court.

### 2. Res Judicata and Collateral Estoppel

Even if *Rooker–Feldman* did not apply, and the complaint could be construed as raising an arguable federal issue, it would be barred under principles of res judicata, or claim preclusion. As the Supreme Court noted in *Exxon Mobil,* the "Full Faith and Credit Act ... requires the federal court to 'give the same preclusive effect to a state-court judgment as another court of that State would give.'" 544 U.S. at 293 (quoting *Parson Steel Inc. v. First Alabama Bank,* 474 U.S. 518, 523 (1986)); 28 U.S.C. § 1738. Michigan has adopted a broad application of the doctrine of res judicata, which bars not only claims actually litigated in the prior action, but all claims arising out of the same transaction that the parties, exercising reasonable diligence, could have raised in the prior action but did not. *Limbach v. Oakland County Bd. of County Road Comm'r,* 226 Mich. App. 389, 396 (1997).

---

Cir. 1981), citing *Denman v. Leedy,* 479 F.2d 1097, 1098 (6th Cir. 1973). *Firestone* characterized this as the "domestic relations exception" to federal jurisdiction. 654 F.2d at 1216. Indeed, more than 100 years ago, the United States Supreme Court stated, "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States." *In re Burns,* 136 U.S. 586, 593–94 (1890).

Application of the doctrine of res judicata in Michigan requires that (1) the first action be decided on its merits, (2) the matter being litigated in the second case was or could have been resolved in the first case, and (3) both actions involved the same parties or their privies. *ABB Paint Finishing, Inc. v. National Union Fire Ins.*, 223 Mich. App. 559, 562 (1997).

First, the State court parental termination proceeding in this case was decided on the merits. The judgment, noting that Plaintiff was represented by counsel, stated that he pled "no contest" to the allegations in the petition, and "held that the allegations were proven by a preponderance of the evidence based on Mr. Nettles' plea." (ECF No. 63-1, PageID.437). The Court further noted that Plaintiff "stipulated to each of the four grounds for termination of his parental rights as asserted in the original petition filed by the department," and "found by clear and convincing evidence there were grounds to terminate Mr. Nettles' parental right." (*Id.*).

Second, any claim raised in the present case concerning Defendant Johnson's alleged misconduct, including whether she participated in a civil conspiracy to deprive Plaintiff of his rights, could have been raised and resolved in the State court proceedings. Instead, Plaintiff, represented by counsel, chose to plead no contest to the allegations in the petition. For purposes of res judicata, Michigan recognizes a "same transaction" test, which provides that "the assertion of different kinds of

theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief." *Adair v. State*, 470 Mich. 105, 124 (2004) (quoting *River Park, Inc. v. Highland Park*, 184 Ill. 2d 290, 307 (1998)). *Adair*, quoting 46 Am Jur.2d, Judgments 533, p. 801, further noted, "[w]hether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation*, [and] whether they form a convenient trial unit…." *Id.* at 125 (emphasis in original). Here, Johnson's alleged actions were clearly related to the petition for termination of Plaintiff's parental rights and to the hearing and judgment on that petition. Plaintiff's allegations against Johnson formed a "convenient trial unit" that could have been adjudicated in the termination proceedings.

Finally, the parties in the State court case – Plaintiff and Child Protective Services (of which Defendant Johnson was an employee) – are the same parties (or their privies) in the present case. *Olivares v. Yaroch*, No. 13-CV-12982, 2015 WL 5604661, at *4 (E.D. Mich. July 23, 2015), *report and recommendation adopted,* No. 13-12982, 2015 WL 5590180 (E.D. Mich. Sept. 21, 2015) (Majzoub, M.J.("[U]nder Michigan law, individual defendants are in privity to prior lawsuits involving their governmental employer") (citing *O'Leary v. Charter Twp. of Flint,* No. 09–13075, 2010 WL 2870400. at *6 (E.D.Mich. Jul. 21, 2010)). The claims against Defendant Johnson are therefore dismissible under Rule 12(b)(6). "[A]

13

complaint is . . . subject to dismissal under Rule 12(b)(6) 'when its allegations indicate the existence of an affirmative defense that will bar the award of any remedy,'" *Scott v. City of Detroit*, No. 20-11572, 2021 WL 323756, at *2 (E.D. Mich. Feb. 1, 2021) (Goldsmith, J.) (citing 5B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 1357 (3d ed. 1998)). "'Although res judicata . . . should be raised as an affirmative defense under Rule 8(c), ... it may be raised in a Rule 12(b)(6) motion where the existence of the defense can be determined from the face of the complaint.'"[4] *Id.* (quoting *Solis v. Global Acceptance Credit Co., L.P.*, 601 F. App'x 767, 771 (11th Cir. 2015)). Accordingly, Defendant Johnson may be dismissed under Rule 12(b)(6) based on res judicata. For overlapping reasons, Michigan law of collateral estoppel mandates dismissal of the claims against Johnson. In contrast to res judicata, "collateral estoppel focuses on

---

[4]In the now-consolidated complaint against Johnson, Plaintiff alleges that on January 15, 2019, Johnson and Bruno "filed a petition to terminate my parental rights to all 5 kids" and "ignored all evidence . . . suggesting [his] innocence." Case No. 1:22-cv-10535 (ECF No. 1, PageID.5, 7, ¶ ¶ ). Further, the complaint in this case requests damages for the "loss of custody of my five children due to the case and false allegations." (ECF No. 1, PageID.6). Johnson's reliance on the state court custody determination in support of the motion to dismiss on the basis of res judicata is not improper. "When a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

specific issues within an action." *Mecosta Cnty. Med. Ctr. v. Metropolitan Grp. Prop. and Casualty Ins. Co.*, 509 Mich. 276, 282–83 (2022). For dismissal on the basis of collateral estoppel: (1) "a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment," (2) the parties or privies "must have had a full and fair opportunity to litigate the issue," and (3) "there must be mutuality of estoppel." *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 682-684 (2004) (internal citations and punctuation omitted). But as to the third requirement, mutuality is not required when collateral estoppel is being used defensively. *Id.* at 690-91 (citing *Knoblauch v. Kenyon,* 163 Mich. App. 712, 725 (1987) ("[M]utuality of estoppel was not required where: (1) collateral estoppel was being asserted defensively and (2) the plaintiff had an opportunity to litigate the issue in a prior proceeding."). Again, because Plaintiff's plea resolved questions of fact and he had an opportunity to dispute the claims against him, his present claim against Johnson must fail.

### 3. Qualified Immunity

Claims against Johnson pertaining to the child sex abuse investigation are barred by the affirmative defense of qualified immunity. A state official is protected by qualified immunity unless the plaintiff shows (1) that the defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the defendant's position would know that the conduct

complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194 (2001). Under *Saucier*, the inquiry was sequential, requiring the district court to first consider whether there was a constitutional violation. However, in *Pearson v. Callahan*, 555 U.S. 223, 129 (2009), the Supreme Court held that the two-step sequential analysis set forth in Saucier is no longer mandatory. Rather, *Pearson* commended the order of inquiry to the judge's discretion, to be exercised on a case-by-case basis.

In *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716 (6th Cir. 2011), the Court found that the social worker was entitled to qualified immunity to her non-quasi prosecutorial activity:

> Because the juvenile court has the ultimate decision-making power with respect to placement and custody, it alone could deprive Pittman of his fundamental right. Therefore, Hurry's conduct did not violate Pittman's substantive due process rights, and she has qualified immunity against that claim.

*Id.* 640 F. 3d at 729.

Following *Pittman*, numerous courts have upheld a CPS worker's entitlement to qualified immunity where he or she is alleged to have engaged in misfeasance, including providing false information to a court, and where the court renders an independent judgment. *Lebeau v. Michigan Dept. of Human Services*, 2011 WL 4962386 (E.D. Mich. 2011) (Duggan, J.), involved child removal proceedings in which the evidence showed that social workers were privy to the plaintiff-father's contact information, but decided not to contact him. DHS investigators indicated

16

that they had made no effort to verify the mother's allegations of abuse. *Id.* at \*3. Citing *Pittman*, the Court found that the social workers were protected by qualified immunity. *See also Kolley v. Adult Protective Services*, 2012 WL 5819475, \*7 (E.D. Mich. 2012) (Goldsmith, J.) (citing cases) ("Since the May 2011 *Pittman* decision, multiple district courts in this Circuit have applied *Pittman* to reject similar claims.").

Likewise here, Johnson's conduct did not deprive Plaintiff of any federally protected constitutional or statutory rights. The judgment terminating his parental rights was rendered by the judge, and as discussed previously, was based on Plaintiff's decision to not contest to the allegations in the petition. Under *Pittman*, Johnson is entitled to qualified immunity.

### III. CONCLUSION

For these reasons, I recommend that the Court **GRANT** Defendant Johnson's Motion to Dismiss (ECF No. 63) **DISMISSING** all claims against her in her individual capacity.

### IV. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days

after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 16, 2023                                         s/PATRICIA T. MORRIS
                                                             Patricia T. Morris
                                                             United States Magistrate Judge